

|  | THE CITY OF NEW YORK | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Acting Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **AMY J. WEINBLATT**<br>*Senior Counsel*<br>PHONE: (212) 356-2179<br>EMAIL: aweinbla@law.nyc.gov |

September 20, 2024

By ECF
Hon. Hector Gonzalez
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Mendoza-Lebron v. Adams, 24-CV-5154 (HG)

Dear Judge Gonzalez:

    This office represents defendants in the above matter. We write pursuant to the Court's Individual Rule IV(A)(2) to request leave to file a motion to dismiss the complaint.

    This lawsuit stems from plaintiffs' failure to pay their water and wastewater bills. Defendant New York City Department of Environmental Protection ("DEP"), acting as an agent for defendant New York City Water Board ("WB"),[1] provides water and wastewater services to more than 800,000 account holders, and issues bills to these account holders for these services. While an account holder is legally responsible for water and wastewater charges, see July 1, 2024 New York City Water Board Water and Wastewater Rate Schedule ("Rate Schedule") at 3, an account holder can contest such charges administratively and then in New York State Court.

    For those who fail to make timely payments that meet certain criteria (see WB Regulation 2 § 3.1(a)), WB Regulation 2 § 3 sets forth a process by which water services can be discontinued. DEP must serve a Notice of Termination on the customer and owner personally or by mail, and must post the notice on the entryway of the premises. The Notice of Termination must include, *inter alia*, the termination date; the amount owed; what the customer must do to avoid termination; contact information for a DEP representative; instructions about pursuing an administrative challenge to the underlying water and wastewater charges; and a summary of exceptions together with a phone number for those who wish to apply for exceptions. WB Regulation 2 § 3.2(c). Section 5 addresses available exceptions and states, *inter alia*, that DEP shall not terminate service to a residential premises when it is notified consistent with procedures outlined therein that an individual with a "significant medical condition" (§ 5.1) or under the age of 6 or over the age of 61 (§ 5.2) resides at the premises. Each of the plaintiffs herein has been granted an exemption

---

[1] The Water Board is a State-created entity. See Public Authorities Law 1045-a et seq.

pursuant to WB Regulation 2 § 5.1 or § 5.2.[2] Against this backdrop plaintiffs assert a variety of claims, none of which has merit. To start, plaintiffs assert a due process claim. Complaint at ¶¶ 208 *et seq*. To establish a due process claim, a plaintiff must "first identify a property right, second show that the state has deprived [plaintiff] of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citations omitted). Assuming that plaintiffs here have a property right in continuing to receive water despite a failure to pay prior charges, plaintiffs cannot meet this standard since the one or more notices they received afforded adequate process consistent with applicable laws and regulations. Each notice includes information on how to contact DEP to contest the water and wastewater charges, make payment, or establish an exemption to a water shut off based on, for instance, a significant medical condition or age of an occupant. Indeed each plaintiff made such contact, some with the assistance of counsel, and each demonstrated they are entitled to an exemption. And while not pertinent here, the administrative process available to obtain an exemption together with the ability to challenge a denial of an exemption in a state court Civil Practice Law and Rules Article 78 proceeding provides sufficient due process. See, e.g., OSI LLC v. City of NY, 2024, No. 22-CV-10921, U.S. Dist. LEXIS 61590, at *10 (S.D.N.Y. Mar. 29, 2024, (ALC)).[3]

To the extent that plaintiffs premise their due process claim on a purported failure to comply with a state or local law, such a failure does not *per se* establish a federal due process violation. Garland v. NYC Fire Dept., 2024 US App LEXIS 2651 (2nd Cir. 2024). "Even if the plaintiffs established violations of state or municipal law, it is well established that 'a violation of state law does not *per se* result in a violation of the Due Process Clause.' Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019)."

Plaintiffs also assert an Americans with Disabilities Act ("ADA") claim. The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services … of a public entity, or be subject to discrimination by any such entity." Complaint at ¶ 255, quoting 42 USC § 12132. The actions described in the complaint—a utility taking enforcement action to collect unpaid bills by sending warning notices to owners, some of whom, unbeknownst to DEP, have individuals in their household with certain medical conditions or who meet certain age criteria—simply do not amount to a public entity "[denying benefits]" to any of the plaintiffs "by reason of such disability" or subjecting them to discrimination "by reason of such disability." "[T]he central purpose of the ADA … is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998); this principle is not violated by defendants' enforcement

---

[2] To the extent that Plaintiffs seek an order at this time that the DEP not shut off the water to their premises, they lack standing and the requested relief is moot. See September 4, 2024 letter to Court, Dkt. 13.

[3] While most of the plaintiffs do not appear to be challenging the underlying water and wastewater charges, the Rate Schedule provides a three-tiered administrative process to challenge such charges going back four years, see Rate Schedule Part VII, § 2(A)-(C), and an adverse administrative decision can be challenged in an Article 78 proceeding before the New York State Supreme Court, which can then be appealed as of right to the New York Appellate Division.

actions. Similarly, "[t]he ADA requires only that a particular service provided to some not be denied to disabled people…Thus, New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." Rodriguez by Rodriguez v. City of N.Y., 197 F.3d 611 (2d Cir. 1999) (citation omitted). Assuming that plaintiffs or their household members who qualify for medical exemptions are people with disabilities within the meaning of the ADA, since DEP does not provide waivers of underlying charges to people without disabilities, DEP's enforcement actions do not violate the ADA. Similarly with respect to plaintiffs' Fair Housing Act ("FHA") claims, DEP's collection efforts addressed to approximately 200,000 delinquent customers, some of whom may have certain medical conditions, does not amount to a violation of the FHA's prohibition against "discrimination … because of a handicap" (assuming that plaintiffs have "handicaps" within the meaning of the FHA).

Finally, since the Plaintiffs' federal claims fail, the Court should decline to exercise supplemental jurisdiction and not address the State law claims set forth at the second and third causes of action.  In either event, these claims fail. Plaintiffs first assert that the defendants violated the New York City Administrative Procedure Act, New York City Charter §§ 1401 et seq. ("CAPA").  Complaint ¶¶ 230 et seq.  That claim fails since the WB, which adopts the Rate Schedule, is not subject to CAPA. The WB is a state-created entity; its implementing legislation specifically preempts any general, special or local law. PAL § 1045-bb. The PAL sets forth the process by which the WB enacts new rates (PAL § 1045-j(3)), and establishes procedures for collection of charges and enforcement of fees. PAL §§ 1045-j(4) & 1045-g(4).  And PAL § 1045-g(3) grants the WB authority to make and amend regulations to exercise its powers and duties.

Plaintiffs also assert a claim premised on the Environmental Rights Amendment ("ERA"), New York State Constitution, Article 1, § 19.  Complaint ¶¶ 240 et seq. The ERA, newly enacted in 2022, recognizes a right in New York State to "clean air and water, and a healthful environment."  N.Y. Const. Art. 1 § 19.  However, Plaintiffs read into this amendment an unqualified right to water supply from the government, without regard to payment. The legislative history of the ERA makes clear that it was not intended to displace New York's expansive environmental regulatory regime developed by environmental professionals over decades, including state-authorized mechanisms for water utilities to set water rates, bill customers, and recover on unpaid water bills. 2019-04-30 New York State Assembly Transcript (available at https://bpb-us-w2.wpmucdn.com/blogs.pace.edu/dist/1/400/files/2022/11/Assembly-Transcript-4.30.2019.pdf). Additionally, the four New York courts that have considered the ERA have all found that the ERA does not displace the robust framework of environmental regulation in New York State.  See Fresh Air for the East Side (FAFE), Inc. v. State of New York, 22 N.Y. Slip. Op. 34429(U) (Sup. Ct. Monroe Cnty. 2022), aff'd, 2024 N.Y. Slip. Op. 03950 (4th Dep't 2024); Marte v. City of New York, 2023 N.Y. Slip. Op. 31198(U) (Sup. Ct. N.Y. Cnty. 2023); Streeter v. New York City Dep't of Envtl. Prot., 2024 Slip. Op. 30571(U) (Sup. Ct. Kings Cnty. 2024); Detering v. New York City Envtl. Control Bd., 2024 N.Y. Slip. Op. 32030(U) (Sup. Ct. N.Y. Cnty. 2024).  This Court should similarly dismiss plaintiffs' ERA claim.

Respectfully,<br>
/s/<br>
Amy J. Weinblatt<br>
Assistant Corporation Counsel

cc:  All counsel (by ECF)

4