UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LILLIANA MENDOZA-LEBRON, HARVEY
MENDOZA, ETHEL OLIPHANT, JIM HAMLIN-
MCLEOD, ELVIRA BELTREZ-TAVAREZ,
FRANCISCO TAVAREZ, JUNIOR BECKFORD,

                                   Plaintiffs,

               vs.

ERIC ADAMS, IN HIS CAPACITY AS MAYOR OF THE
CITY OF NEW YORK, ROHIT T. AGGARWALA, IN
HIS CAPACITY AS COMMISSIONER OF THE NYC
DEPARTMENT OF ENVIRONMENTAL PROTECTION,
AND NEW YORK CITY WATER BOARD,

                              Defendants.

24-CV-5154 (HG)

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of the
  City of New York
100 Church Street
New York, NY 10007
Tel: 212-356-2179

Michelle Goldberg-Cahn,
Mark Muschenheim,
Amy J. Weinblatt,
     of Counsel

## PRELIMINARY STATEMENT

Defendants Eric Adams, in his capacity as Mayor of the City of New York; Rohit T. Aggarwala, in his capacity as Commissioner of the NYC Department of Environmental Protection ("DEP"), and the New York City Water Board ("Water Board") submit this memorandum of law in support of their motion to dismiss the complaint pursuant to FRCP 12(b)(6). First, plaintiffs lack standing and the complaint is moot. Additionally, plaintiffs fail to state a federal claim and this Court should decline supplemental jurisdiction over the state law claims. Moreover, even if the Court does not decline such jurisdiction, plaintiffs have also failed to state a claim pursuant to State law.

This lawsuit stems from each plaintiff's failure, over extended periods of time, to pay their water and wastewater bills. DEP, acting as an agent for the defendant Water Board[1] provides water and wastewater services to more than 800,000 account holders and issues bills to these account holders, who are responsible for paying for the services. While an account holder is legally responsible for water and wastewater charges, see July 1, 2024 New York City Water Board Water and Wastewater Rate Schedule ("Rate Schedule")[2] at 3, an account holder may

---

[1]  The Water Board is an autonomous seven-member public benefit corporation, established in 1984 pursuant to the New York City Municipal Water Finance Authority Act, which is codified as Public Authorities Law ("PAL") §§ 1045-a, *et seq*.  Pursuant to the PAL and a subsequent Agreement of Lease By and Between the City of New York and the New York City Water Board, dated July 1, 1985 ("Lease"), the Water Board assumed responsibility for the operation of the City's water systems.  *See* PAL §§ 1045-f, 1046.  Pursuant to the Lease, DEP acts as the agent of the Water Board.  In this capacity, DEP is responsible for, *inter alia*, billing and collecting water and sewer charges.

[2] The Water Board adopts, typically on an annual basis, the Rate Schedule that is set forth under Appendix A of Title 15 of the Rules of the City of New York ("RCNY") and is available at https://www.nyc.gov/site/nycwaterboard/rates/rates-regulations.page. The Water Board has also adopted other regulations as relevant herein that are available at

(continued...)

contest such charges administratively and then in New York State Court via a New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding.

Water Board Regulation 2, Discontinuance of Water Supply and/or Sewer Service Because of Nonpayment, § 3 sets forth the process by which water supply may be discontinued for nonpayment. *See also* Water Board Regulation 2 §3.1(a) (specifying amount and length of delinquency requirements for termination). The Water Board must serve a Notice of Termination on the resident and owner personally or by mail, and must post the notice on the entryway of the premises. Id. §3.2(a) & (b). The Notice of Termination must include, *inter alia*, the termination date; the amount owed; what the customer must do to avoid termination; contact information for a DEP representative; instructions about pursuing an administrative challenge to the underlying water and wastewater charges; and a summary of exceptions together with a phone number for those who wish to apply for exceptions to termination of water and wastewater services. Id. §3.2(c).[3] Notice of the right to contest a shut off notice and/or of the availability of exemptions is set forth in Water Board Regulation 2, on DEP's website, and on the water shut off notices sent by DEP.

Water Board Regulation 2 § 5 addresses available exceptions and states, *inter alia*, that the Water Board shall not terminate service to a residential premises when it is notified consistent with procedures outlined therein that an individual either with a "significant medical

---

(...continued)
https://www.nyc.gov/assets/nycwaterboard/downloads/pdf/regulations/20080610_regulation2.pdf.

[3]    Water    Board    Regulation    2    is    available    at
https://www.nyc.gov/assets/nycwaterboard/downloads/pdf/regulations/20080610_regulation2.pdf.

condition" (§ 5.1) or under the age of 6 or over the age of 61 (§ 5.2) resides at the premises. Additionally, Water Board Regulation 2 § 4 outlines the procedures for contesting a termination, which must be done within 10 days of receipt of a Notice of Termination; a decision on such an application is a final determination of the agency. Information on DEP's website also clearly sets forth procedures for claiming an exemption to a water shut off, stating as follows:

> You may be eligible to stop the water shut off if you have a significant medical condition, are 62 years of age or older, disabled, or have children under 6 years of age living in the household. To claim an eligible exemption or enter into a payment agreement, contact DEP's Collections Unit at 718-595-7890 Monday to Friday between 9am and 5pm.
>
> To be considered for an exemption, please submit all relevant documentation to **watershutoff@dep.nyc.gov**.[4]

And the notices each plaintiff received advised them of the availability of exceptions to water shut off based on significant medical conditions or age of a resident, as plaintiffs acknowledge. See Complaint ¶¶ 96, 119, 143, 162, 197.

Since the commencement of this action, each plaintiff has been found eligible for an exemption from their water being shut off—that is, each of the plaintiffs herein applied for and was granted an exemption pursuant to Water Board Regulation 2 § 5.1 or § 5.2.[5]  Thus the action is moot and plaintiffs, no longer aggrieved, lack standing. Additionally, plaintiffs fail to state a due process claim. Even assuming plaintiffs have established a property right, ample process was provided prior to water shut off. And plaintiffs have failed to plead an act of

---

[4] https://www.nyc.gov/site/dep/water/water-shut-off-notices.page#:~:text=if%20your%20water%20is%20shut,that%20DEP%20restore%20your%20service.

[5] See September 26, 2024, Stipulation at Dkt. 15, and September 4, 2024, letter to the Court at Dkt. 13.

discrimination as prohibited by either the Americans with Disabilities Act or the Fair Housing Act. Finally, none of plaintiffs' State law claims have merit; there is no right under the New York State Environmental Protection Act to a water supply regardless of payment, and the City and State human rights laws plaintiffs rely on are not implicated when the Water Board enforces its payment schedule and provides exceptions to water shut off for nonpayment based on certain factors, even if some attempts to utilize such exceptions are allegedly not immediately successful.

## STATEMENT OF MATERIAL FACTS

Homeowners in New York City are required to pay their water and wastewater charges. Indeed, payment of such fees is what allows the water supply to continue. The plaintiffs in this case, New York City homeowners, have each failed over a period of years to stay current with their water and wastewater bills, accumulating large arrearages; each one owes (or, in one case, owed) tens of thousands of dollars to the Water Board. Plaintiffs were sent bills, delinquency notices, notices of amnesty programs, and warning notices by the Water Board prior to being sent a notice that their water would be shut off for long-term nonpayment of their water bills.

Plaintiffs Lilliana Mendoza-Lebron and Harvey Mendoza, who own the property located at 25-18 Curtis Street, East Elmhurt, New York, owe over $24,000 in unpaid water bills.[6] See Complaint ¶ 83. Plaintiff Ethel Oliphant, who owns the property known as and located at 122 Marcus Garvey Boulevard, Brooklyn, New York owes approximately $29,198. Complaint ¶ 118. Plaintiffs Elvira Beltrez-Tavarez and Francisco Tavarez, who own the property located at

---

[6] Amounts provided are as of the date the complaint was filed except as to plaintiffs Beltrez-Tavarez and Tavarez.

2439 89th Street, East Elmhurst, New York, owed $58,018 as reflected on a bill dated July 18, 2024. Complaint ¶ 161. DEP subsequently received payment from a third party on their behalf in that amount but new, unpaid charges have since posted to the account. Plaintiff Junior Beckford, who owns the property located at 1602 East 49th Street, Brooklyn, New York, owes approximately $37,064. Complaint ¶ 196. Plaintiff Jim Hamlin-McLeod, who owns the property located at 110 Hampton Green, Staten Island, New York, owes approximately $44,437. Complaint at ¶ 142. See accompanying Declaration of Amy Weinblatt ("Weinblatt Decl.") ¶ 3. None of the plaintiffs alleges that they are or were current on their water bills, and none alleges that they did not consume the water or use the wastewater services for which they were billed.

As noted above, plaintiffs acknowledge receiving their respective water shut off notices, and established procedure provides for applying for an exemption or contesting a planned termination. However, no plaintiff administratively contested their planned termination and no plaintiff received a final determination on such a contestation or on an application for an exemption prior to filing the instant case, and none filed an administrative appeal or Article 78 petition.

## ARGUMENT

In assessing a motion to dismiss under Rule 12(b)(6), a court may look to the facts alleged in the complaint, documents attached thereto or incorporated by reference, documents that are "integral" to a plaintiff's claims even if not expressly incorporated by reference, as well as matters of public record, documents in plaintiff's possession, or documents that the plaintiff knew of or relied upon in bringing suit. Chambers v. Time Warner, 282 F.3d 147, 152-53 (2d Cir. 2002); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991).

## POINT I

## PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE MOOT

It is axiomatic that a plaintiff must have standing to bring a suit. Primary components of standing are (a) an injury that (b) can be addressed by the Court. Plaintiffs herein have not been injured and there is nothing the Court can address since plaintiffs' water has not been shut off and they have each been found qualified for an exemption (see September 26, 2024 Stipulation at Dkt. 15). As explained by the Court in L.C. v. LeFrak Org., Inc., 987 F. Supp. 2d 391, 397 (S.D.N.Y. 2013), standing is both a jurisdictional and a constitutional requirement:

> This Court has a jurisdictional obligation to address whether each plaintiff has Article III standing to bring this action. The Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring [the] suit." Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) (citation omitted). To establish constitutional standing, "[t]he plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third it must be likely, as opposed to merely "speculative" that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation omitted).

Plaintiffs have not suffered an "injury in fact," and none is imminent; therefore, there is no injury to be "redressed by a favorable decision." Indeed, plaintiffs fail to articulate actual damages they claim to have suffered. Accordingly, plaintiffs lack standing to pursue their action.

Similarly, plaintiffs' claims are moot. Their water was not shut off and each has been granted an exemption. Additionally, hot summer weather, a persistent concern set forth in the complaint, is no longer an issue. Thus none of the plaintiffs suffered any injury of the type

described in the complaint and it must be dismissed on mootness grounds. Compare Memphis Light, Gas & Water Div., 428 U.S 1 (1978), where plaintiffs' water shut off claims for allegedly overdue bills had also been resolved—but only after their water had been shut off several times and thus it was not moot. "Respondents' claim for actual and punitive damages arising from MLG&W's terminations of service saves this cause from the bar of mootness." Memphis Light, Gas & Water Div., 428 U.S at 8. In contrast, in the instant matter, no plaintiff's water was shut off, none is imminently in danger of having their water shut off by virtue of the exemptions they have received, and no plaintiff alleges they incurred related damages. Without any damages suffered by plaintiffs to save it from mootness, the complaint must be dismissed.

**POINT II**

**WATER SHUT OFF PROCEDURES, INCLUDING NOTICES, DO NOT VIOLATE DUE PROCESS**

**A.    No Monell Liability**

Because they have failed to allege a causal connection between the actions or inactions of the municipal entity and the alleged deprivation, and also fail to allege a policy or practice that led to the alleged deprivation, plaintiffs fail to state a claim pursuant to Monell v. Dep't of Soc. Servs, 436 U.S. 658, 690 (1978). See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion) and Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). See also Bd. of the Cnty. Commrs v. Brown, 520 U.S. 397, 404 (1997). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Plaintiffs entirely fail to

7

allege a causal connection or degree of culpability on the part of defendant Water Board that led to a constitutional deprivation.

As discussed *supra*, the Water Board has an established and publicized policy of providing an opportunity for customers who receive water shut off notices to apply for exemptions. These are set forth in the Water Board Regulation 2 §4, on DEP's website, and in the notices that each plaintiff received. And Plaintiffs do not allege a practice that led to their claimed due process violation. Even if some DEP employees initially provided inaccurate information via telephone call or did not timely reply to email correspondence, this does not amount to municipal liability. Municipal liability under § 1983 is limited to acts of the municipality as opposed to acts of the municipality's employees.  <u>Pembaur</u>, 475 U.S. at 479.  See also <u>Bd. Of the Cty. Comm'rs v. Brown</u>, 520 U.S. at 403-407 ("a municipality may not be held liable under § 1983 solely because it employs a tortfeasor" … "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably[]").

## B.    Plaintiffs' Due Process Claim Fails Since Adequate Process was Provided

Plaintiffs' procedural due process claim, Complaint at ¶¶ 5, 65, and 208 *et seq.*, lacks merit on other grounds. At the outset, termination of water service for a significant overdue balance is permissible.  "The City [of Auburn, New York] clearly has the right to terminate water service as a result of unpaid bills." <u>Pilchin v. City of Auburn</u>, 728 F.Supp.2d 192, 200 (N.D.N.Y. 2010). And it is undetermined whether there is a property right to water in the Second Circuit. "The Second Circuit has withheld any determination as to whether there is a fundamental right to water supply protected by the Due Process Clause and there is no need to address that issue …." <u>Pilchin</u>, 728 F.Supp. at 197, citing <u>Walz v. Town of Smithtown</u>, 46 F.3d 162 (2d Cir. 1995).

Even assuming that plaintiffs have asserted a property right, defendants provide sufficient process to challenge a notice of termination. To establish a due process claim, a plaintiff must "first identify a property right, second show that the state has deprived [plaintiff] of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citations omitted). Assuming that (1) plaintiffs here have a property right in continuing to receive water despite a failure to pay prior charges, or that their claim to "a property interest in exemptions to water termination enshrined in New York State law and regulations" Complaint at ¶ 211, has merit, plaintiffs still cannot meet this standard since (2) there has been no deprivation; no plaintiff has had their water shut off or is in imminent danger of having their water shut off.

Moreover, the (non-existent) deprivation would have been effectuated with adequate process. Water Board regulations, along with DEP's website and the notices plaintiffs received, make it clear that there are exemptions from water shut off. Thus it is clear that the Water Board provides adequate process in the form of available information and instructions for how to claim an exemption from a water shut off.  Consistent with the provisions of the Water Board Rate Schedule and Regulations and the information set forth on DEP's website, one or more notices each plaintiff received clearly described available pre-shut off process consistent with applicable laws and regulations, including information on how to contact the Water Board to contest the water and wastewater charges, how to make payment, and how to seek an exemption to a water shut off based on, for instance, a significant medical condition or age of a resident (older than 61 or younger than 6). See, e.g., ¶ 67. One notice, captioned "Water Shut Off Notice," includes the following language regarding the type and availability of exemptions: "You may be eligible to stop the water shut off if you have a significant medical condition, are

62 years of age or older, disabled, or having children under 6 years of age living in the household. To claim an eligible exemption or enter into a payment agreement[,] contact DEP's Collections Unit at 718-595-7890 Monday to Friday from 9AM [to] 5PM."  See Exhibit A to Weinblatt Decl. As noted above, the DEP website has additional information, including an email address and an instruction to send documentation in support of an exemption application.[7] In addition to the language on the correspondence plaintiffs received, additional language on DEP's website sets forth ample information to guide a customer seeking an exemption, including a phone number to call and an email address with instructions to send documentation relating to a claimed exemption. https://www.nyc.gov/site/dep/water/water-shut-off-notices.page.  In relevant part, the website states as follows:

**Exemptions**

You may be eligible to stop the water shut off if you have a significant medical condition, are 62 years of age or older, disabled, or have children under 6 years of age living in the household. To claim an eligible exemption or enter into a payment agreement, contact DEP's Collections Unit at 718-595-7890 Monday to Friday between 9am and 5pm.

To be considered for an exemption, please submit all relevant documentation to **watershutoff@dep.nyc.gov**. An owner or household with an occupant 62 and older may submit a copy of a valid, government-issued picture ID with proof of address. To claim exemption of a child under 6, a birth certificate or passport along with the parents' valid ID and proof of address may be submitted. Medical conditions and disability claims can be supported with a doctor's note.[8]

---

[7] As noted *supra,* to the extent plaintiffs claim that they followed the procedures outlined in the notices and were incorrectly instructed that payments were required before they could establish an exemption, plaintiffs fail to state a claim under Monell v. Dept of Soc. Svcs., 436 U.S. 658 (1978).

[8] Only one plaintiff alleges they sent an email to DEP. Complaint ¶ 100.

Finally, an individual aggrieved by an administrative determination on an exemption application or by a termination complaint determination may file a CPLR Article 78 petition. The administrative process available to obtain an exemption together with the ability to challenge a denial of an exemption in a state court Civil Practice Law and Rules Article 78 proceeding provides sufficient due process. See, e.g., OSI LLC v. City of NY, 2024, No. 22-CV-10921, U.S. Dist. LEXIS 61590, at *10 (S.D.N.Y. Mar. 29, 2024, (ALC)).[9]

In Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978), the U.S. Supreme Court held that customers have a property right in their water supply where same was provided by state law of Tennessee, and held that due process requires both procedures to contest bills and that customers be notified of such procedures. In that case, while there were established procedures for contesting water bills, it was undisputed that the plaintiffs/customers were not notified of the availability of such procedures (in the notices the utility sent customers, "[n]o mention was made of a procedure for the disposition of a disputed claim[]". Memphis Light, Gas & Water Div. v. Craft, 436 U.S. at 13. In contrast, it is undisputed that defendants herein maintain procedures for administratively contesting water bills and applying for shut-off exemptions, and that customers are notified in writing of such availability and provided with information on how to contest bills and apply for exemptions both in written notices mailed directly to them and on DEP's publicly available website.[10]

---

[9] While most of the plaintiffs do not appear to be challenging their individual underlying water and wastewater charges, the Rate Schedule provides a three-tiered administrative process to challenge charges going back four years, see Rate Schedule Part VII, § 2(A)-(C), and an adverse administrative decision can be challenged in an Article 78 proceeding before the New York State Supreme Court, which can then be appealed as of right to the New York Appellate Division.

[10]        See        Water        Board        Regulation        2        at
https://www.nyc.gov/assets/nycwaterboard/downloads/pdf/regulations/20080610_regulation2.pd

(continued...)

To the extent that plaintiffs premise their due process claim on a purported failure to comply with a state or local law, such a failure does not *per se* establish a federal due process violation. Garland v. NYC Fire Dept., 2024 US App LEXIS 2651 (2nd Cir. 2024). As discussed *infra* Point IV, there is no state law violation; however, "[e]ven if the plaintiffs established violations of state or municipal law, it is well established that 'a violation of state law does not *per se* result in a violation of the Due Process Clause.' Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019)." Id.

Plaintiffs Mendoza-Lebron and Mendoza's allegation that they never received a bill for water and wastewater services, Complaint at ¶ 81, does not obviate the fact that customers remain legally liable for payment for such services. See Rate Schedule at 3.11. Even if defendants failed to provide timely bills, neither erroneous billing practices nor subsequent collection and enforcement efforts constitute due process violations when notice and an opportunity to be heard is provided, as they were here.

Finally, to the extent that plaintiffs claim that the procedures in place to apply for an exemption to water shut offs set forth in the Water Board Regulations, DEP website, and the notices plaintiffs received were inadequate, that claim fails. "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews v. Eldridge, 424 U.S. 319, 334 (1976). The Supreme Court has

---

(...continued)

f: DEP website at https://www.nyc.gov/site/dep/water/water-shut-off-notices.page#:~:text=if%20your%20water%20is%20shut,that%20DEP%20restore%20your%20service

[11] With hundreds of thousands of accounts, Weinblatt Decl. ¶ 4, the Water Board cannot be aware of which households may not have properly updated account address information or for some other reason may have not received bills for services.

consistently recognized that procedural due process is "flexible and calls for such procedural protections as the particular situation demands . . . a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." Morrisey v. Brewer, 408 U.S. 471, 481 (1972); Mathews, 424 U.S. at 334.

The framework for determining whether a particular administrative procedure provides adequate process is set forth in Mathews v. Eldridge and involves a balancing of interests test that considers the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation and the benefit of alternative or additional safeguards; and (3) the government interest, including the function involved and the fiscal and administrative burdens that substitute or additional procedural requirements would entail. Mathews, 424 U.S. at 335.

This balancing test demonstrates that adequate process has been provided. While plaintiffs' interest in a continued water supply is considerable—assuming there is either a property right in continuing to receive water that has not been paid for, or a property right in an exemption to the enforcement mechanism of having one's water service terminated for nonpayment—there is minimal risk of an erroneous deprivation through the procedures used and significant government interest in maintaining the procedure. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. at 17, 18.[12]

---

[12] In Memphis Light, Gas & Water, the Court found there was a risk of an error with the procedures used due to the possibility of computer error. In that case, a customer would be hard pressed to address such an error where they were not notified of the availability of procedures to challenge a bill. The facts here are entirely distinguishable, since such notice is provided. Thus there is minimal risk of erroneous deprivation with the procedures available in the instant matter.

The risk of an erroneous deprivation in the factual scenario set forth in the complaint is minimal. Water shut off would only potentially occur when significant unpaid bills have accumulated, and then it would only apply to the premises with the unpaid bill and only after notices of the delinquency along with notices of opportunities to challenge the bill or to apply for an exemption have been sent. Plaintiffs do not allege that DEP or the Water Board maintained erroneous records or sent erroneous bills, and in any case, correspondence sent to plaintiffs includes amounts due and information about how to challenge those amounts. Should any erroneous bill be sent or shut off be imminent, the homeowner/account holder has an opportunity to challenge the bills by following instructions on the notices. See Pilchin v. City of Auburn, 728 F.Supp. 2d 192 (N.D.N.Y. 2010) (pre-termination right to challenge water shut-off was established for plaintiff/tenant where previously it was only available to owner/landlord; while the process therein was a hearing, the import of the decision was that due process required an opportunity for the occupant to challenge water shut off—"During a hearing, issues concerning billing errors or the failure to properly credit a payment could be brought to light[])." Pilchin, 728 F.Supp.2d 200. Moreover, no plaintiff herein has alleged any error in the claim of overdue bills.

Similarly, the government interest in the current procedures is patently obvious and significant. DEP and the Water Board cannot supply water unless it is paid for; shutting off water when it is not paid for allows DEP and the Water Board to continue to supply water to customers who are paying for the service. Pursuant to PAL 1045-j(1), the Water Board has the statutory authority to, *inter alia*, establish and collect payment for the provision of water and wastewater services in amounts sufficient to pay debt service on bonds, and make lease payments to the City sufficient to fund water and wastewater operations. It is uncontested that

the Water Board provides processes to challenge enforcement efforts; plaintiffs essentially only contend that they were initially given erroneous information when they availed themselves of the opportunity to seek an exemption by telephone, and that an email that one plaintiff sent did not receive a timely response. There is no claim that a more exhaustive process—which would certainly be more costly and time-consuming—would have yielded a more efficient result, and in any case, no deprivation occurred.

**C.     Plaintiffs Fail to Allege Personal Involvement of Either Individual Defendant**

Personal involvement is necessary for § 1983 liability, and plaintiffs do not point to any specific action by either of the named individual defendants that led to or is in any way connected with the alleged deprivation of their individual due process rights. While plaintiffs allege that New York City officials promoted the collection program for delinquent water bills, there is no allegation in the complaint that either Mayor Adams or Commissioner Aggarwala played a role in the water shut off process as applied to any plaintiff in the or drafting or sending of any of the notices plaintiffs received; in the initial difficulty plaintiffs allegedly encountered in applying for an exemption to having their water shut off; or in the phone conversations or other communications that plaintiffs allege they had with unnamed individuals they describe as "DEP representatives" who provided inaccurate information or in one case, did not respond promptly to an email. Complaint at ¶¶ 85, 86, 123, 145, 146, 167, 178, 200, 202; see also ¶ 75. Without allegations of personal involvement, the § 1983 due process claims must be dismissed as against Mayor Adams and Commissioner Aggarwala. "Plaintiffs' § 1983 claims against defendants must be dismissed, because plaintiffs do not allege any defendant's direct or personal involvement in the conduct which may have caused the constitutional deprivation. 'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' Farrell v. Burke, 449 F.3d 470, 484 (2d Cir.

2006) [additional citations omitted]." <u>Jones v. DeBlasio</u>, 2017 U.S. Dist. LEXIS 55352, *6 (E.D.N.Y. 2017).

Similarly, there is no liability on the part of the Mayor or Commissioner due to their position as supervisors. "Plaintiffs' claims fail for the additional reason that liability cannot be imposed on the defendants solely because of their positions as supervisors, as there is no *respondeat superior* or vicarious liability under § 1983. See, e.g., <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "Because § 1983 claims depend on a showing of personal responsibility, plaintiffs' claims against defendants cannot rest on a theory of *respondeat superior*. <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003) [additional citations omitted]." <u>Jones v. DeBlasio</u>, 2017 U.S. Dist. LEXIS 55352, *6-7. Accordingly, the due process claims must be dismissed against Mayor Adams and Commissioner Aggarwala.

## <u>POINT III</u>

### PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO THE AMERICANS WITH DISABILITIES ACT OR THE FAIR HOUSING ACT

Plaintiffs' overlapping Americans with Disabilities Act ("ADA") and Fair Housing Act ("FHA") claims are without merit. With respect to plaintiffs' ADA claims (asserted on behalf of plaintiffs Oliphant, Hamlin-McLeod, and Tavarez, see Complaint at p. 46), other than a son of one of them, these plaintiffs have not alleged with any specificity that they have a

disability pursuant to the ADA; not all medical conditions are covered by the ADA.[13] The FHA claims appear to be asserted on behalf of all plaintiffs, but plaintiffs similarly fail to allege with any specificity that each of the plaintiffs has a handicap pursuant to the FHA.[14] A "disability" or "handicap" is a condition that "substantially limits one or more major life activities,"[15] and plaintiffs do not allege that each of the plaintiffs has such limitations. In any case, even if they had made such allegations, these claims fail.

The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services … of a public entity, or be subject to discrimination by any such entity." Complaint at ¶ 255, quoting 42 USC § 12132. The FHA

---

[13] Plaintiff Tavarez "has a blood disorder, coronary artery disease, difficulty swallowing, and extreme anxiety." ¶ 158. Plaintiff Oliphant "suffers from congestive heart failure, high blood pressure and has an abdominal aneurysm. One of her sons has Asperger's Syndrome and suffers from depression. Her other son has a heart condition." Complaint ¶ 111. Plaintiff Hamlin-McLeod "suffers from chronic hypertension." Complaint ¶ 137. Examples of disabilities covered by the ADA include cancer, diabetes, PTSD, HIV, autism, cerebral palsy, deafness or hearing loss, blindness or low vision, epilepsy, mobility impairments, major depressive disorder, and traumatic brain injury. Introduction to the Americans with Disabilities Act: n.d., in ADA.gov. Retrieved November 14, 2024 https://www.ada.gov/topics/intro-to-ada/

[14] Plaintiffs Beckford and Mendoza are alleged to have diabetes, which appears to be covered by the ADA.

[15] "Federal nondiscrimination laws define a person with a disability to include any (1) individual with a physical or mental impairment that substantially limits one or more major life activities; (2) individual with a record of such impairment; or (3) individual who is regarded as having such an impairment. In general, a physical or mental impairment includes, but is not limited to, examples of [sic] conditions such as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus (HIV), developmental disabilities, mental illness, drug addiction, and alcoholism." Disability Overview, n.d., in HUD.gov, Retrieved November 14, 2024, https://www.hud.gov/program_offices/fair_housing_equal_opp/disability_overview#:~:text=Federal%20nondiscrimination%20laws%20define%20a,as%20having%20such%20an%20impairment.

prohibits "discriminat[ion] against any person in the … provision of services or facilities in connection with [a] dwelling, because of a handicap …" Complaint at ¶ 266, quoting 42 USC § 3604(f)(2). The actions described in the complaint—a utility taking enforcement action to collect unpaid bills by sending notices warning of pending shut off of water and wastewater services to owners, some of whom, unbeknownst to the Water Board, have individuals in their household with certain medical conditions or who meet certain age criteria, followed by plaintiffs' initially unsuccessful attempts to apply for exemptions that the Water Board offers—simply do not amount to a public entity "[denying benefits]" to any of the plaintiffs "by reason of such disability" or subjecting them to discrimination "by reason of such disability." Nor does it amount to "discrimination because of a handicap," assuming any of the plaintiffs' medical conditions amount to a "handicap" under the FHA.

Plaintiffs' allegedly unsuccessful initial efforts to avail themselves of exemption procedures does not amount to an act of discrimination. Indeed no adverse action was taken against any of the plaintiffs. "[T]he central purpose of the ADA … is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998). This principle is not violated by defendants' enforcement actions. Similarly, "[t]he ADA requires only that a particular service provided to some not be denied to disabled people … Thus, New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." Rodriguez by Rodriguez v. City of N.Y., 197 F.3d 611 (2d Cir. 1999) (citation omitted). Assuming that any of the plaintiffs or their household members who qualify for medical exemptions are people with disabilities within the meaning of the ADA or have handicaps within the meaning of the FHA, since the Water Board does not provide waivers of underlying charges or enhanced exemption procedures for certain non-

18

disabled people (for example, age-based exemptions), the Water Board's enforcement actions and exemptions do not violate the ADA or FHA.

Similar issues were addressed by the Second Circuit in <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261 (2d Cir. 2003). In that case, plaintiffs successfully alleged an ADA violation based on the allegedly inadequate efforts by the City of New York's Division of AIDS Services and Income Support ("DASIS") to provide support to New Yorkers with AIDS or symptomatic HIV who needed assistance obtaining City services to which they were entitled. Plaintiffs therein, who by virtue of their medical conditions[16] were physically limited in their abilities to access various City services, were found entitled to the effective services of DASIS, which was charged with the obligation to assist these individuals because their health impairments prevented them from otherwise accessing City benefits. The situation in the instant matter is simply not analogous; the Water Board is not failing to provide services. The Water Board provides water and wastewater services—for which customers are required to pay—and employs uniformly applicable consequences as a means of enforcing payment of bills, which consequences can include a shut off. The Water Board also provides exemptions to that particular consequence of failing to pay to people with significant medical conditions and to people within certain age groups. The Water Board's allegedly flawed application of the exemption in the five instances described in the complaint is not analogous to the allegedly ineffective services that DASIS provided its constituents, who were unable, due to their illnesses, to otherwise access benefits provided by New York City. The Water Board's service is the

---

[16] These included illnesses, physical disabilities, and suppressed immunity that made them vulnerable to illness if they sought such services in the same manner as New Yorkers without HIV/AIDS. <u>Henrietta D. v. Bloomberg</u>, 331 F.3d at 267.

provision of water and wastewater service; an allegation that it did not, in a few instances, effectively administer exceptions to an enforcement mechanism for non-payment is not tantamount to a denial of services based on a disability or handicap.

**POINT IV**

**THE COURT SHOULD DENY PENDANT
JURISDICTION OVER STATE LAW CLAIMS**

Should the Court find that plaintiffs have failed to state a cause of action under federal law, it should decline to address the State law claims set forth at the second and third causes of action. Pursuant to 28 U.S.C. § 1367(c), this Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. As a general rule, "if the federal claims are dismissed before trial, … the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims[]); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004). These factors favor declining jurisdiction here.

**POINT V**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR
VIOLATION OF STATE LAW**

**A.    No CAPA Violation**

Plaintiffs first assert that the defendants violated the New York City Administrative Procedure Act, New York City Charter §§ 1041 *et seq*. ("CAPA").  Complaint ¶¶

230 *et seq.*[17] That claim fails since the Water Board, which adopts the Rate Schedule, is not subject to CAPA (to the extent plaintiffs argue that their CAPA claim is directed to DEP rather than the Water Board, that argument fails since in the instant circumstances, DEP is merely an agent of the Water Board. See *supra* fn. 1). The Water Board is a state-created entity; its implementing legislation specifically preempts any general, special, or local law.[18] N.Y. Public Authorities Law ("PAL") § 1045-bb. The PAL sets forth the process by which the Water Board enacts new rates (PAL § 1045-j(3)), and establishes procedures for collection of charges and enforcement of fees. PAL §§ 1045-j(4) & 1045-g(4). And PAL § 1045-g(3) grants the Water Board authority to make and amend regulations to exercise its powers and duties, and it has authority to fix, revise, establish fees and rates. The Water Board has authority to enforce payment pursuant to PAL § 1045-j(5), including by shutting off water pursuant to proper procedures. Matter of Prometheus Realty Corp. v. New York City Water Board,  30 N.Y.3d 639 (2017).

**B.    No Violation of Section 19 of Article 1 of the New York State Constitution**

The Court should also dismiss Plaintiffs' third cause of action, which alleges that their right to "access to clean water" pursuant to the New York State Environmental Rights

---

[17] Within their CAPA allegations at Complaint ¶ 238, plaintiffs allege that defendants "implemented its down-payment requirement policy in an arbitrary and capricious manner, by treating similarly situated residents in a disparate manner." This allegation is without merit as there appear to be no allegations made for a comparison to demonstrate any alleged disparate treatment or any arbitrary and capricious action by defendants.

[18] Thus there is no merit to plaintiffs' allegation, Complaint at ¶ 132, that it is unlawful for the Water Board to impose payment plans with minimum monthly payment higher than $10 or one with a maximum term. There is also no merit to the allegation, Complaint at ¶ 104, that the Water Board is barred from holding account owners responsible for the full amount of their unpaid bills.

Amendment ("ERA") was violated by defendants' management of the plaintiffs' delinquent balances.  The ERA, newly enacted in 2022, recognizes a right in New York State to "clean air and water, and a healthful environment."  N.Y. Const. Art. I sec. 19.  However, plaintiffs read into this amendment an unqualified right to water supply from the government, without regard to payment. The legislative history of the ERA makes clear that it was not intended to displace New York's expansive environmental regulatory regime developed by environmental professionals over decades, including state-authorized mechanisms for water utilities to set water rates, bill customers, and recover on unpaid water bills. 2019-04-30 New York State Assembly Transcript (available                          at                          https://bpb-us-w2.wpmucdn.com/blogs.pace.edu/dist/1/400/files/2022/11/Assembly-Transcript-4.30.2019.pdf). In fact, the lead sponsor for the implementing state legislation stated during a hearing on the measure that "[a]ll the [ERA] does is reassure participants … that if you are a citizen of this State, that you have the right to know…that the environment is expected to be healthful for you and your loved ones." Id.  Additionally, the four New York courts that have considered the ERA have all found that the ERA does not displace the robust framework of environmental regulation in New York State.  See Fresh Air for the East Side (FAFE), Inc. v. State of New York, 22 N.Y. Slip. Op. 34429(U) (Sup. Ct. Monroe Cnty. 2022), affirmed FAFE, 2024 N.Y. Slip. Op. 03950 (4th Dep't 2024) (the ERA does not displace New York State's regulatory scheme for permitting municipal solid waste landfills); Marte v. City of New York, 2023 N.Y. Slip. Op. 31198(U) (Sup. Ct. N.Y. Cnty. 2023) (the ERA does not displace the State Environmental Quality Review Act or provide an independent avenue for challenging approvals for a housing development); Streeter v. New York City Dep't of Envtl. Prot., 2024 Slip. Op. 30571(U) (Sup. Ct. Kings Cnty. 2024) (dismissing ERA challenge to City's administration of citizen enforcement of idling law,

and holding the ERA's "legislative history confirms it was not intended to change existing laws, such that it allow this Court, in essence, to become the forum to modify the Administrative Code"); <u>Detering v. New York City Envtl. Control Bd.</u>, 2024 N.Y. Slip. Op. 32030(U) (Sup. Ct. N.Y. Cnty. 2024) (local law amending Noise Code to reduce maximum penalty did not violate the ERA). This Court should similarly dismiss plaintiffs' ERA claim.

**C.    No violation of New York State Human Rights Law/Executive Law § 296**

NYSHRL § 296(2)(a) and (2)(c)(i) prohibit denying public accommodations because of a disability. Uniformly enforcing non-payment of water bills against individuals who are delinquent in their bills, when such enforcement includes exceptions to water termination for those who can demonstrate a significant medical condition, does not amount to denying a public accommodation. The complaint alleges that defendants "discriminated against Plaintiffs and failed to reasonably accommodate [them] by concealing the medical exemptions category, depriving them of meaningful access to a reasonable accommodation." Complaint at ¶ 277. This allegation is refuted by the complaint itself, which acknowledges that notices plaintiffs received included information about exemptions. Complaint at ¶ 67. Moreover, plaintiffs provide no support for their implied claim that supplying water in a private home is a "public accommodation" under the meaning of Executive Law § 296.

**D.    No violation of New York City Human Rights Law/Title 8 of the New York City Administrative Code**

Plaintiffs again allege that defendants discriminated against them and failed to reasonably accommodate them "by concealing the significant medical exemption category, depriving them of meaningful access to a reasonable accommodation." Complaint at ¶ 282. As set forth above, this is patently incorrect. Notices plaintiffs received, as acknowledged in the Complaint at ¶ 67, as well as publicly available information on DEP's website and in Water

Board regulations, clearly state that exemptions from water shut off due to significant medical conditions are available, and include instructions for how to obtain them. Additionally, Title 8 of the New York City Administrative Code protects New Yorkers from discrimination in various contexts and circumstances, none of which includes access to water or other utilities. Moreover, even if the provision of water were included, nothing plaintiffs allege amounts to withholding or denying water or concealing or denying access to exemptions based on discrimination.

## **CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss should be granted in all respects.

Dated:      New York, New York
             November 21, 2024

                     MURIEL GOODE-TRUFANT
                     Acting Corporation Counsel of the
                      City of New York
                     Attorney for Defendants

                     By:     /s/
                          AMY J. WEINBLATT
                          Assistant Corporation Counsel
                          100 Church Street
                          New York, NY  10007
                          (212) 356-2179
                          aweinbla@law.nyc.gov