UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LILLIANA MENDOZA-LEBRON *et al.*,

        Plaintiffs,

v.

ERIC ADAMS, *in his capacity as Mayor of the City of New York*, *et al.*,

        Defendants.

**MEMORANDUM & ORDER**
24-CV-05154 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff homeowners[1] bring this action pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*; the Fair Housing Act (the "FHA")[2], 42 U.S.C. § 3601 *et seq.*; and various state and local laws, alleging claims against various City of New York (the "City") Defendants[3]. ECF No. 1 (Compl.). Before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1)[4] and 12(b)(6). ECF No. 19 (Mot. to Dismiss). For the reasons explained below, Defendants' motion is GRANTED.

---

[1]     Plaintiffs are Lilliana Mendoza-Lebron, Harvey Mendoza, Ethel Oliphant, Jim Hamlin-McLeod, Elvira Beltrez-Tavarez, Francisco Tavarez, and Junior Beckford.

[2]     The ADA and FHA claims are brought as to Plaintiffs Oliphant, Hamlin-McLeod, and Tavarez only. ECF No. 1 at 46.

[3]     Defendants are Eric Adams, in his capacity as Mayor of the City, Rohit T. Aggarwala, in his capacity as Commissioner of the City's Department of Environmental Protection ("DEP"); and the New York City Water Board ("Water Board"). The City is not a Defendant.

[4]     Although Defendants move to dismiss only under Rule 12(b)(6), the Court's consideration of a motion to dismiss for mootness and lack of standing is properly considered under Rule 12(b)(1). *See Gannon v. 31 Essex St. LLC*, No. 22-cv-1134, 2023 WL 199287, at *2 (S.D.N.Y. Jan. 17, 2023) (considering a 12(b)(6) motion to dismiss for lack of standing under Rule 12(b)(1)).

## BACKGROUND[5]

Plaintiffs are challenging the City's policy of shutting off running water to buildings whose owners are delinquent on their water bills.  ECF No. 1 ¶¶ 1–2.  The City's DEP and Water Board supply water to over eight million people.  *Id.* ¶ 19.  Historically, the City has not shut off residential water service for unpaid bills due to health and safety concerns.  *Id.* ¶ 22.  Beginning in 1996 under then-Mayor Giuliani, the City began annually selling and securitizing property tax and water liens through City-established trusts.  *Id.* ¶ 23.  Subsequent amendments to the lien sale law in 2001 and 2007 expanded this authority, allowing the City's lien-sale entities to use judicial foreclosure.  *Id.* ¶ 24.  However, protections were added:  the 2007 law excluded single-family homeowners and vulnerable low/moderate-income two- or three-family homeowners (*i.e.*, elderly, disabled, veterans, and service-members) from having water/sewer debts sold.  *Id.* ¶¶ 25–28.  Though their debts continued to accrue without sale, this policy aimed to let vulnerable residents stay in their homes.  *Id.*  In 2020, during the COVID-19 pandemic, a state-mandated suspension halted the lien sale; it briefly resumed in December 2021, with water debt again excluded.  *Id.* ¶¶ 29–30.

In March 2024, Mayor Adams announced a new policy of shutting off water to individual City property owners who were delinquent on their water bills.  *Id.* ¶¶ 31–32.  Plaintiffs allege that Defendants are targeting one- and two-family homes for water shutoffs, while using law firms to collect from larger buildings, and that this approach disregards the fact that many small-homeowners owe large debts due to hardship, past repayment plans, or exemptions under the

---

[5] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

City's policy protecting elderly or disabled residents from lien sales. *Id.* ¶¶ 34–39. Plaintiffs further allege that although Defendants say their goal "is to be compassionate to those who deserve our compassion and enforcing on those who are trying to game the system," Defendants have failed to provide notice to Plaintiffs of "any protections for seniors or families with children, and have not even complied with existing protections that are in place for residents who are living with medical conditions, many of whom are disabled, which would ensure access to running water for vulnerable individuals." *Id.* ¶¶ 41–42.

The Water Board is subject to the Home Energy Fair Practices Act ("HEFPA") and its implementing regulations, protecting residential utility customers, including those receiving water service. *Id.* ¶¶ 47–48. HEFPA regulations—enforced by the New York State Public Service Commission—prohibit water shutoffs in households where a medical emergency exists, as certified by a doctor or health board. *Id.* ¶¶ 47, 51. These protections also extend to residents who are elderly, blind, disabled, or minors. *Id.* ¶¶ 50–55. In such cases, water utilities must take proactive steps to avoid termination, including offering payment plans without downpayments; limiting back-billing collection to 12 months of missed payments; involving social services; and continuing service for a specified period after notification. *Id.* ¶¶ 55–59. The Water Board's regulation, titled "The Discontinuance of Water Supply and/or Sewer Service Because of Nonpayment," or "Regulation 2," mirrors the HEFPA protections. *Id.* ¶¶ 60–61. It requires a renewable 30-day pause on shutoffs for medically vulnerable residents and mandates contact with an adult resident, referral to the City's Human Resources Administration if needed, and a 20-day continuation of service for protected households (including those with elderly, disabled, or minor residents). *Id.* ¶ 61. Regulation 2 also mandates that termination notices clearly

summarize applicable exemptions and procedures for resolving disputes before service is shut off. *Id.* ¶¶ 62–63.[6]

As part of their 2024 water debt collection plan, Defendants sent pre-termination notices to Plaintiffs' households, threatening imminent water shutoffs. *Id.* ¶¶ 66–67, 94, 117, 141, 160, 195. These notices contain the following provision: "You may be eligible to stop the water shut off if you have a significant medical condition, are disabled, or have children under 6 years of age living in the household. To claim an eligible exemption or enter into a payment agreement contact DEP's Collection Unit at 718-595-7890 Monday to Friday from 9AM and 5PM." *Id.* However, Plaintiffs allege that the notices did "not provide further information regarding how to prove one's entitlement to these exemptions or protections, nor even meaningful information as to what the grounds for exemption or protection are," nor did they "provide a complete description of detailed procedures to submit a complaint and have that complaint considered prior to service termination." *Id.* ¶¶ 68–69. Plaintiffs further allege that Defendants proceed with terminations despite being notified of exemptions, fail to offer affordable payment plans without downpayments, neglect to involve social services, and engage in improper back-billing while withholding information about legal protections and providing misleading guidance to residents seeking help. *Id.* ¶¶ 70–75.

All Plaintiffs received some notice from Defendants that they were delinquent on their water bills and threatening to shut off their water. *Id.* ¶¶ 66–67, 94, 117, 141, 160, 195. Since then, all Plaintiffs have qualified for a medical or age exemption. *See* ECF No. 25 (Defs.' Suppl.

---

[6] The Court discusses HEFPA and Regulation 2 solely to provide context for Plaintiffs' allegations. Neither framework is material to the Court's legal analysis of Plaintiffs' federal claims. Defendants do not dispute that Regulation 2 sets forth the procedures governing termination of water service due to nonpayment. *See* ECF No. 19 at 3 ("Water Board Regulation 2 . . . sets forth the process by which water supply may be discontinued for nonpayment.").

Letter); *see also* ECF No. 27 (Status Letter).[7]  No Plaintiff alleges that their water was shut off.  ECF No. 1.

## PROCEDURAL HISTORY

Plaintiffs initiated this action on July 24, 2024.  ECF No. 1.  On July 25, 2024, Plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI") seeking an order requiring Defendants to maintain water service at the residences of Plaintiffs Mendoza-Lebron, Oliphant, and Hamlin-McLeod.  ECF No. 2.  The next day, the Court granted the TRO and ordered that Defendants show cause why a PI should not issue.  ECF No. 9.  After the Court granted three extensions, *see* July 29, 2024, August 6, 2024, September 6, 2024, Text Orders, on September 26, 2025, the parties resolved the PI motion by stipulating that water would not be shut off at any of Plaintiffs' residences during the pendency of this litigation except for Plaintiff Hamlin-McLeod, ECF No. 15.  The parties further stipulated that "the exemption eligibility for [P]laintiff Hamlin-McLeod . . . expires on June 21, 2025, when the resident youngest family member reaches the age of six years old" but that Defendants "will consider additional evidence of exemption eligibility for [P]laintiff Hamlin-McLeod if such is submitted."  *Id.* at 2.

On November 22, 2024, Defendants filed their motion to dismiss, raising, *inter alia*, a mootness challenge.  ECF No. 19.  On December 30, 2024, Plaintiffs filed their opposition with no request for leave to amend.  ECF No. 21.  On January 14, 2025, Defendants filed their reply in support of the motion to dismiss.  ECF No. 22.  Expressing concern that the parties did not adequately brief the mootness issue, the Court ordered Defendants "to provide an update with respect to each named Plaintiff and advance any additional arguments with respect to mootness"

---

[7]  "In resolving a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

5

and Plaintiffs to file a response. *See* June 2, 2025, Text Order. On June 10, 2025, Defendants filed a supplemental letter supplying updates on each Plaintiff's exemption status and further briefing the mootness issue. ECF No. 25. On June 16, 2025, Plaintiffs filed their response. ECF No. 26 (Pls.' Suppl. Letter). Finally, on June 20, 2025, Defendants filed a letter stating that they had determined, as of June 18, 2025, that Plaintiff Hamlin-McLeod qualified for "a medical exemption from having water and wastewater services shut off for nonpayment." ECF No. 27.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Because Defendants challenge subject-matter jurisdiction, the Court "consider[s] the Rule 12(b)(1) challenge first" because if the Court finds that it lacks subject-matter jurisdiction, then the Defendants' other "defenses and objections become moot and do not need to be determined." *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). "A district court properly dismisses an action under [Rule 12(b)(1)] for lack of subject-matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015). Dismissal under Rule 12(b)(1) is also proper "when a case becomes moot." *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013). These limitations are derived from Article III of the Constitution, which cabins the federal courts' jurisdiction to deciding live cases or controversies. U.S. Const. art. III, § 2, cl. 1. In essence, Article III requires that "the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001).

"A plaintiff asserting subject-matter jurisdiction must prove by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. In considering a motion to dismiss for lack

of subject-matter jurisdiction, a "district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### B. Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

In brief, Plaintiffs seek the following relief: a declaratory judgment that Defendants violate, *inter alia*, the Fourteenth Amendment by failing to provide meaningful notice of water shutoff exemptions; an injunction prohibiting water shutoffs while due process and other legal obligations are unmet; damages for "emotional distress and pecuniary harm"; and attorney's fees and costs. ECF No. 1 at 51–52. For this analysis, the Court separates these forms of relief into two categories: forward-looking relief and backward-looking relief. The declaratory and injunctive relief Plaintiffs seek are forward-looking, while damages for past harm are inherently backward-looking. As discussed below, the Court finds that because Plaintiffs qualify for exemptions to the termination of water services, Plaintiffs' forward-looking federal claims are

7

moot, Plaintiffs' backward-looking federal claims fail on the merits, and the Court declines to exercise supplemental jurisdiction as to Plaintiffs' state and local claims.

## I. The Claims for Injunctive and Declaratory Relief Are Moot

"Article III demands that an actual controversy persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). "[T]he doctrine of mootness . . . addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). Defendants, not Plaintiffs, bear the "burden to establish that a once-live case has become moot." *Id.* "The parties must retain a continued personal stake in the outcome . . . leaving [the Court] to resolve only real and substantial controversies admitting of specific relief rather than issue decisions advising what the law would be upon a hypothetical state of facts." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022). "A moot action therefore must be dismissed, even if the case was live at the outset but later events rendered it moot . . . ." *Id.* "A live controversy remains as long as a court can fashion some form of meaningful relief to award the complaining party, and even the availability of a possible remedy is sufficient to prevent a case from being moot." *Id.*

Defendants argue that the "[i]njunctive and declaratory judgment claims brought by Plaintiffs . . . are moot" because "[e]ach household has been granted an exemption based on either age or a medical condition [and] no Plaintiff's water and wastewater services were shut off or are likely to be shut off as long as the qualifying medical or age-related conditions remain in effect." ECF No. 25 at 3. While Plaintiffs assert that their claims are not moot, they do so by invoking exceptions to the mootness doctrine without first addressing whether their claims are, in fact, moot. *See* ECF No. 21 at 15–16. This misapprehends the threshold inquiry. The central question is whether Plaintiffs continue to face a live controversy. On that point, Plaintiffs do not

dispute that each household has received an exemption from water shutoffs. This undisputed fact renders their claims for injunctive and declaratory relief moot. Plaintiffs nevertheless argue that the need to periodically recertify their eligibility for an exemption, coupled with alleged defects in Defendants' exemption process, brings their claims within two exceptions to the mootness doctrine. *See* ECF No. 26 at 1.

In resisting Defendants' mootness argument, Plaintiffs invoke both the "voluntary cessation" and the "capable of repetition, yet evading review" exceptions to mootness. *Id.* at 2–3. "Generally, the voluntary cessation of allegedly illegal conduct is not enough to render a case moot." *Exxon*, 28 F.4th at 395. Otherwise, a defendant might "strategically alter its conduct in order to prevent or undo a ruling adverse to its interest." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006). Nevertheless, a case involving such voluntary cessation may be moot where "there is no reasonable expectation" of the alleged violation's recurrence, and interim events have "completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). For the capable of repetition, yet evading review exception to apply, a party must show that "(1) the challenged action [i]s in duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647–48 (2d Cir. 1998). "This facet of the mootness doctrine is applicable only in exceptional situations." *Exxon*, 28 F.4th at 395.

As to the voluntary cessation doctrine, Defendants argue that it "not applicable here since there is no reasonable expectation of the allegedly unlawful activity resuming while these households remain qualified for exemptions." ECF No. 25 at 4. Plaintiffs contend that "[w]hile

9

the Defendants may have amended the Water Board Regulation 2 governing water and sewer service termination, these amendments are not permanent, could be repealed, and in any event do not ensure that the Defendants have resolved the significant due process violations that deprived Plaintiffs of access to necessary services to which they are entitled." ECF No. 26 at 3.  As to the capable of repetition, yet evading review doctrine, Plaintiffs argue that because they will be "required to periodically recertify their entitlement to an exemption from water shut-off," their exposure to Defendants' alleged due process violations is "certain of repetition." ECF No. 26 at 2.

      The Court finds that both exceptions are inapplicable here because there is no "reasonable expectation that the conduct at issue in the present suit will recur." *See Exxon*, 28 F.4th at 395–96 (finding that without a reasonable expectation of recurrence, neither the voluntary cessation nor the capable-of-repetition exceptions to mootness apply).  Here, there is no "reasonable expectation" that Plaintiffs will again be subjected to the alleged unlawful conduct—water shutoff threats without meaningful notice or accommodation—because each Plaintiff has now qualified for an exemption under the City's existing policies, and the protections afforded by Regulation 2 and HEFPA remain in place and operative.  *See* ECF Nos. 25, 27.  The City has not merely promised to refrain from future shutoffs, it has affirmatively granted exemptions to every Plaintiff based on established criteria (*i.e.*, age, disability, or medical condition).  *See id.*  These exemptions are renewable and tied to durable characteristics (*i.e.*, chronic illness or age), and Plaintiffs have not plausibly alleged any intent by Defendants to arbitrarily revoke or deny exemptions in the future.  *See Scott v. Fields*, No. 20-cv-810, 2020 WL 7080333, at *2 (S.D.N.Y. Dec. 3, 2020) ("Courts generally do not apply the exception where the action 'capable of repetition' requires future violations of the law.").  The

mere possibility that Plaintiffs may, at some future date, fail to re-certify or submit documentation in support of a requested exemption does not create a live controversy or a reasonable expectation of recurrence. *See Meadors v. Erie Cnty. Bd. of Elections*, No. 23-1054, 2024 WL 3548729, at *2 (2d Cir. July 26, 2024) ("Mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence.").[8]

As to Plaintiffs' arguments regarding Defendants' amendments to Regulation 2, their arguments are self-defeating. Plaintiffs do not contend that the regulatory framework itself is legally inadequate or facially unconstitutional. Instead, they assert that the City violated both the original and amended versions of Regulation 2 by denying exemptions or conditioning them on improper payments. See ECF No. 1 ¶¶ 76–205; ECF No. 26 at 2–3. In other words, Plaintiffs acknowledge that the City's own policies—both before and after amendment—expressly provided the protections they now claim were denied to them. That framing fatally undermines their assertion that the alleged violations are likely to recur. If Plaintiffs' alleged injuries stemmed from noncompliance with valid regulations, rather than from the absence of adequate protections, then there is no reasonable basis to expect future injury so long as the City continues

---

[8] Plaintiffs also reference a non-party homeowner who allegedly experienced a shutoff despite being elderly, blind, and wheelchair-bound. *See* ECF No. 26 at 3. However, far from supporting Plaintiffs' position, this example underscores the mootness of their injunctive and declaratory judgment claims. The cited incident involves a third party, not a named Plaintiff, and does not suggest any likelihood that *these* Plaintiffs will again face unlawful termination. Plaintiffs cannot revive moot claims by invoking the alleged experiences of others. *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 58 (2d Cir. 2013) ("A party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

11

to apply its existing rules in good faith. *See Exxon*, 28 F.4th at 395–96 (exceptions to mootness do not apply where the risk of recurrence is purely speculative).

Nor does the absence of a formalized medical exemption application process require that Plaintiffs' claims be sustained. Plaintiffs do not allege that they were denied exemptions for failing to comply with unclear or unpublished procedures, nor that they would be unable to comply with future requirements. On the contrary, the record shows that every Plaintiff has since qualified for and actually received an exemption under the current framework. See ECF Nos. 25, 27. Plaintiffs cannot maintain a live controversy based on the hypothetical risk that, at some future point, Defendants might fail to properly implement a policy that already affords the protections Plaintiffs claim they were due. *See Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998) ("Nor will it suffice to hypothesize the possibility that at some future time, under circumstances that could only be guessed at now, the parties could theoretically become embroiled in a like controversy once again."). Accordingly, the voluntary cessation and capable-of-repetition exceptions do not apply, and Plaintiffs' declaratory judgment and injunctive relief claims are moot and dismissed without prejudice.[9]

---

[9] Plaintiffs Mendoza-Lebron and Mendoza further argue that their claims are not moot because they "allege an additional due process violation" in the form of allegedly improper "backbilling" in violation of New York regulations. *See* ECF No. 26 at 3–4. The Court agrees that the backbilling issue is live but one live issue does not render all otherwise moot claims live. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."). The Court addresses below why the backbilling claim fails on the merits. *See infra* n.11.

## II.     The Damages Claims Fail on the Merits

Although the Court finds Plaintiffs' declaratory judgment and injunctive relief claims to be moot, Plaintiffs' claims for damages are not moot.[10]  *See Farquharson v. Lafayette*, No. 19-cv-3446, 2020 WL 1699985, at *4 (S.D.N.Y. Apr. 7, 2020) ("[T]he Court concludes that, although [p]laintiff's claims for injunctive and declaratory relief have been mooted[,] . . . her claims are not moot to the extent she seeks damages for Defendants' alleged constitutional violations.").  Therefore, the Court proceeds to analyze the merits of Plaintiffs' damages claims.

### *A.     Due Process Claims*

Plaintiffs argue that Defendants' threats to shut off their water and sewage services constitute violations of their Fourteenth Amendment rights to procedural due process.  *See* ECF No. 21 at 11–17.  They claim damages under Section 1983, including "emotional distress" resulting from "Defendants' acts and omissions."  ECF No. 1 ¶¶ 213, 224, 229.  The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law."  To state a due process claim, "a plaintiff must first identify a property right, second show that the state has deprived him or her of that right, and third show that the deprivation was effected without due process."  *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018).

Even accepting Plaintiffs' assertions that "[a]ccess to continued water service is a property interest" protected by the Fourteenth Amendment, ECF No. 21 at 12, and "that the Constitution requires that the government provide pre-deprivation process", *id.* at 14, Plaintiffs still fail to satisfy the second prong set forth in *Progressive Credit Union*, 899 F.3d at 51.  Here,

---

[10]     On this point, the parties agree.  *See* ECF No. 25 at 5 ("Defendants recognize . . . that a claim for damages is not itself moot even if declaratory judgment and injunctive relief claims in the Complaint are found to be moot."); ECF No. 26 at 4 (same).

13

Plaintiffs fail to state a procedural due process claim because they do not allege that the Defendants deprived them of a property interest. *See Kerry v. Din*, 576 U.S. 86, 90 (2015) ("Although the amount and quality of process that our precedents have recognized as 'due' under the Clause has changed considerably since the founding, it remains the case that no process is due if one is not deprived of life, liberty, or property.").[11]

Plaintiffs allege that Defendants *threatened* to terminate their water service, but no Plaintiff alleges that their water service was actually turned off. *See generally* ECF No. 1. A mere threat, without an actual termination of service, does not constitute a deprivation. *See Pisman v. Zucker*, No. 17-cv-7210, 2019 WL 181313, at *7 (E.D.N.Y. Jan. 10, 2019) ("[T]hreats . . . are not sufficient to meet the deprivation requirement of procedural due process."); *see also O'Connor v. Pierson*, 426 F.3d 187, 196–200 (2d Cir. 2005) (finding no due process violation where plaintiff was placed on paid sick leave and required to undergo psychiatric evaluation because no meaningful deprivation of property occurred until paid leave ended). Because no Plaintiff was actually deprived of water service, and because Plaintiffs do not plausibly allege that the threat alone caused a constitutionally cognizable injury, they have failed to state a due process claim.[12]

---

[11]  Plaintiffs further allege "an additional due process violation" arising out of Defendants "inappropriate backbilling" in violation of New York regulations. *See* ECF No. 26 at 3–4; ECF No. 1 ¶¶ 83–85, 92, 104. "Even if the [P]laintiffs established violations of state or municipal law, it is well established that a violation of state law does not *per se* result in a violation of the Due Process Clause." *Garland v. N.Y.C. Fire Dep't*, No. 23-663, 2024 WL 445001, at *3 (2d Cir. Feb. 6, 2024). Plaintiffs do not allege that they were denied an opportunity to challenge the billing, or that the backbilled charges led to a shutoff, lien, or other deprivation of property. Without more, the ongoing billing dispute, to the extent there is one, does not raise a cognizable due process claim. *See Kerry*, 576 U.S. at 90 ("[N]o process is due if one is not deprived of life, liberty, or property.").

[12]  If the Court construed the Complaint as alleging that Plaintiffs suffered a violation of their procedural due process rights simply through the receipt of insufficient notice regarding the water shutoffs, *see* ECF No. 1 ¶¶ 220–24; ECF No. 21 at 14–17, their failure to allege a

14

B.     ADA and FHA Claims

Plaintiffs' ADA and FHA claims similarly fail.  The ADA mandates "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, the FHA prohibits "discriminat[ion] against any person in the . . . provision of services or facilities in connection with [a] dwelling, because of a handicap of (A) that person; or (B) a person residing in . . . that dwelling; or (C) any person associated with that person."  *Id.* § 3604(f)(2).  "To assert a claim under Title II of the ADA . . . a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."  *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  To state a reasonable accommodation claim under the FHA, a plaintiff must allege that:  (1) she had a disability; (2) the defendant knew of or should have known of the disability; (3) the requested accommodation "was likely necessary to afford the [disabled] person an equal opportunity to use and enjoy the dwelling"; (4) the "accommodation requested was reasonable"; and (5) "the defendant refused to make the requested accommodation."  *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).  Because the reasonable accommodation standards adopted by the two statutes are nearly

---

deprivation would still doom their claims.  As the Supreme Court has made clear, "notice and an opportunity to be heard are the *vehicles* which must be used to protect pre-existing rights:  they are not rights in and of themselves."  *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) (emphasis in original) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

15

identical, the Court considers the merits of these claims together. *Pinckney v. Carroll*, No. 18-cv-12198, 2019 WL 6619484, at *6 (S.D.N.Y. Dec. 4, 2019).

On this point, the Complaint is not a model of clarity. Plaintiffs allege that "Defendants have failed to reasonably accommodate Plaintiffs by concealing the significant medical exception category and depriving them of meaningful access to a reasonable accommodation" in violation of the ADA and FHA. ECF No. 1 ¶¶ 261, 272. To the extent Plaintiffs contend that the reasonable accommodation they were denied was accurate information regarding the availability of exemptions and the procedures for applying for them, that theory is not cognizable under either statute. Neither the ADA nor the FHA requires public entities to proactively provide detailed guidance about every benefit or exemption that might be available; rather, they prohibit discrimination "because of . . . disability." *See McElwee*, 700 F.3d at 640. Alleged confusion about how to access an accommodation—without more—is insufficient to state a claim.

To the extent Plaintiffs allege that the reasonable accommodation they were denied was the exemption itself, that theory also fails. As alleged in the Complaint, no Plaintiff's water was shut off. *See generally* ECF No. 1. Additionally, all Plaintiffs received the following notice: "You may be eligible to stop the water shut off if you have a significant medical condition, are 62 years of age or older, disabled, or have children under 6 years of age living in the household." *Id.* ¶¶ 96, 119, 143, 162, 197. As Defendants note:

> [t]he actions described in the [C]omplaint—a utility taking enforcement action to collect unpaid bills by sending notices warning of pending shut off of water and wastewater services to owners, some of whom, unbeknownst to the Water Board, have individuals in their household with certain medical conditions or who meet certain age criteria, followed by [P]laintiffs' initially unsuccessful attempts to apply for exemptions that the Water Board offers—simply do not amount to a public entity denying benefits to any of the [P]laintiffs by reason of such disability or subjecting them to discrimination by reason of such disability.

16

ECF No. 19 at 19.  The Court agrees.  Nowhere in the Complaint do Plaintiffs allege that they were treated differently *as a result of* their disabilities.  *See generally* ECF No. 1.

Plaintiffs rely on *Henrietta D. v. Bloomberg*, 331 F.3d 261, 274–75 (2d Cir. 2003) for the proposition that the ADA "requires affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities."  ECF No. 21 at 24.  However, "[t]he fact that Plaintiff[s] advance[] a reasonable accommodation claim thus does not eliminate the requirement that [they] show that any denial of treatment was due to [their] disability." *Tardif v. City of New York*, No. 13-cv-4056, 2017 WL 3634612, at *3 (S.D.N.Y. Aug. 23, 2017).  Indeed, *Henrietta D.* makes clear that in order to allege a violation of the ADA on a reasonable accommodation theory, "there must be something different about the way the plaintiff is treated by reason of disability."  331 F.3d at 276.  The Complaint lacks such an allegation.  Furthermore, none of the Plaintiffs alleges that their water was shut off.  *See generally* ECF No. 1.  If anything, the Complaint shows that Defendants affirmatively accommodate homeowners with disabilities by creating exemptions to water shutoffs specifically *because of* their disabilities; the Complaint suggests that a similarly situated homeowner who failed to pay her water bill but lacked an exemption-qualifying disability would have lost water service.  *See id.* ¶ 5 ("[Plaintiffs] are eligible for a full statutory exemption from any potential water shut-off"); ¶ 26 ("Vulnerable individuals who qualify for these exemptions are often unable to pay ongoing water bills for the very reason that they are eligible for the exemption: most have disabilities . . . .").

Even under a disparate impact theory, Plaintiffs must allege that the challenged policy denied them meaningful access to water services because of their disabilities.  *See Wright v. N.Y. Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) ("In examining [an ADA] claim, we ask whether

17

a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled."). Here, while Plaintiffs allege deficiencies in the notice and exemption process, they do not plausibly allege that these deficiencies disproportionately burdened them as individuals with disabilities, or that Defendants refused to reasonably accommodate their needs once eligibility was demonstrated. Because Plaintiffs have not alleged that they "were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities," their ADA claims are dismissed with prejudice. *Henrietta D.*, 331 F.3d at 272. Similarly, because Plaintiffs have not alleged that Defendants "refused to make the requested accommodation," their FHA claims are dismissed with prejudice. *Olsen*, 759 F.3d at 156.[13]

### III. The Court Will Not Exercise Supplemental Jurisdiction

Plaintiffs also bring claims alleging violations of the City's Administrative Procedure Act ("CAPA"), the New York Constitution, New York State Human Rights Law, and New York City Human Rights Law. *See* ECF No. 1 ¶¶ 230–249, 274–83. As a threshold matter, Defendants urge the Court not to exercise supplemental jurisdiction over these claims in light of the dismissal of Plaintiffs' claims under Section 1983, ADA, and FHA. *See* ECF No. 19 at 21. The only two bases for subject-matter jurisdiction in this case are federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. *See* ECF No. 1 ¶¶ 7–8. Accordingly, the state and local law claims depend on the Court's exercise of supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise

---

[13] Defendants argue that Plaintiffs "have not alleged with any specificity that they have a disability pursuant to the ADA" or "handicap pursuant to the FHA." ECF No. 19 at 17–18. Although potentially meritorious, the Court need not reach this argument having dismissed the ADA and FHA claims on other grounds.

18

supplemental jurisdiction if," as here, "it has dismissed all claims over which it has original jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Ordinarily, a court's resolution of all the claims over which it has original jurisdiction before trial "generally points to declining to exercise supplemental jurisdiction" over any remaining claims. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018). In considering the "traditional values of judicial economy, convenience, fairness, and comity," the Court declines to exercise supplemental jurisdiction in this case. *See Kolari*, 455 F.3d at 122. First, the case is still in its early stages as this is the first dispositive motion brought by the parties. Second, the parties have not engaged in discovery. Third, the vehicle for their CAPA claim is an Article 78 proceeding in New York State court. *See, e.g.*, *Uber Techs., Inc. v. N.Y.C. Dep't of Consumer & Worker Prot.*, 196 N.Y.S.3d 911 (N.Y. Sup. Ct. 2023). But Article 78 review is outside of this Court's subject-matter jurisdiction, so "exercising supplemental jurisdiction would needlessly fracture this case between the two court systems." *Golds v. City of New* York, No. 25-cv-03587, 2025 WL 1895233, at *7 (E.D.N.Y. July 8, 2025). Accordingly, the Court dismisses Plaintiffs' state and local law claims without prejudice.

\* \* \*

## **CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss is GRANTED. *See* ECF No. 19. Plaintiffs' declaratory and injunctive relief claims are moot and dismissed without prejudice. Plaintiffs' federal damages claims under Section 1983, the ADA, and the FHA are dismissed with prejudice. As to Plaintiffs' state and local law claims, the Court declines to exercise supplemental jurisdiction, and dismisses these claims without prejudice. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
July 11, 2025